## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE JANNEY MONTGOMERY SCOTT LLC FINANCIAL CONSULTANT LITIGATION | **MASTER FILE: 06-3202** |

### MEMORANDUM

**Schiller, J.**                                                                          **July 16, 2009**

On July 20, 2006, Plaintiff Sean Farhy filed this action, which was subsequently consolidated with two other cases and, on July 17, 2007, the Class Representatives filed a Consolidated Complaint.[1]  The Consolidated Complaint alleged that Janney Montgomery Scott, LLC ("Janney") violated the Fair Labor Standards Act of 1968, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"), the Pennsylvania Minimum Wage Act of 1968, as amended, 43 Pa. C.S.A. § 333.101 *et seq.*, the Pennsylvania Wage Payment and Collection Law, 43 Pa. C.S.A. § 2601 *et seq.*, and the Pennsylvania Administrative Code.  The FLSA claims were brought as a collective action on behalf of all Securities Brokers nationwide and the Pennsylvania claims were brought as a class action on behalf of all Securities Brokers within the Commonwealth.[2] The parties eventually settled their differences and on February 9, 2009, the Court preliminarily certified a settlement class and collective action

---

[1] Pursuant to the Court's Order of July 3, 2007, the three cases, *Farhy v. Janney Montgomery Scott, LLC*, Civ. A. No. 06-3202 (E.D. Pa.); *Incitti v. Janney Montgomery Scott, LLC*, Civ. A. No. 06-3969 (E.D. Pa.); and *Haag v. Janney Montgomery Scott, LLC*, Civ. A. No. 06-1445 (W.D. Pa.), were consolidated into a single action under the above caption.

[2] The Consolidated Complaint defines "Securities Brokers" as "individuals who sold and/or marketed, or trained to sell and/or market, securities and other financial products ("Financial Products") sold by Defendant (defined herein), including but not limited to employees with any one of the following job titles: (i) Securities Broker, (ii) Financial Advisor, (iii) Financial Services Representative, (iv) Investment Executive, and/or (v) Financial Consultant, who are or were employed by Janney Montgomery Scott, LLC ("Janney"), and any other parent, subsidiary, related or successor companies . . . ."  (Consol. Compl. ¶ 2.)

and granted preliminary approval of the settlement agreement.  On June 30, 2009, after notice was mailed to the class and collective action members, the Court conducted a fairness hearing.  The Court now grants final certification of the settlement class and collective action, approves the settlement, and awards attorneys' fees and costs.

## I.    BACKGROUND

### A.    Nature and History of the Litigation

Plaintiffs and the similarly situated Securities Brokers sold financial products on behalf of Janney and were paid primarily on a commission basis.  (Consol. Compl. ¶ 10.)  While Plaintiffs primarily received commission payments, they were also paid a minimum monthly salary when they did not receive commissions.  (*Id.* ¶¶ 56.)  This monthly minimum was less than the federal minimum wage.  (*Id.*)  Plaintiffs' job responsibilities also regularly required them to work more than forty hours each week.  (*Id.* ¶ 11.)  Plaintiffs allege that Janney violated the FLSA and the aforementioned Pennsylvania labor laws by misclassifying Securities Brokers as exempt from state and federal overtime laws, and, accordingly, failing to pay overtime compensation for work performed beyond the forty-hour work week.  (*Id.* ¶¶ 14-21.)  Plaintiffs sought compensatory, statutory and punitive damages, as well as costs and reasonable attorneys' fees.  (*Id.* Prayer for Relief.)

The action involves two classes with substantially similar claims.  The collective action class is composed of "[a]ll current and former Securities Brokers of Defendant who are/were engaged in, or training to be engaged in, the business of selling Financial Products, and elect to opt-in to this action pursuant to the FLSA" (hereinafter "Nationwide Collective Class").  (*Id.* ¶ 5.)  The class

2

action class is comprised of "[a]ll current and former Securities Brokers of Defendant in the Commonwealth of Pennsylvania who are/were engaged in, or training to be engaged in, the business of selling Financial Products" (hereinafter "PA Class"). (*Id.*)

On August 16, 2007, shortly after the filing of the Consolidated Complaint, Janney moved to dismiss the state law claims. The litigation was subsequently stayed on September 27, 2007, in light of settlement discussions between the parties and eventually the case was placed in administrative suspense on March 31, 2008. After the litigation was removed from suspense on May 15, 2008, Plaintiffs filed a response to the motion to dismiss. While that motion was pending, Janney filed for summary judgment on the claims of Plaintiff Haag, partial summary judgment on the claims of Plaintiff Incitti (this motion was later voluntarily dismissed), and summary judgment on the claims of Plaintiff Farhy.

The parties mediated their dispute on multiple occasions, but were unable to reach a settlement. Negotiations, however, continued between the parties and they were eventually able to reach an agreement. On November 25, 2008, this Court ordered all outstanding motions to be withdrawn and directed the parties to file, by January 7, 2009, a motion for preliminary approval of a settlement in the matter. An extension was subsequently granted, and on February 3, 2009 Plaintiffs filed an Unopposed Motion for Preliminary Approval of Joint Stipulation and Settlement Agreement. Following a hearing on February 9, 2009, the Court granted preliminary approval of the settlement agreement.

The Court preliminarily certified a settlement class consisting of "All individuals who were employed by Janney Montgomery Scott LLC and/or Parker/Hunter, Inc. (collectively "Janney"), in the position of Financial Consultant, Financial Consultant Trainee, Financial Advisor, and/or

3

Financial Advisor Trainee, during all or part of the maximum applicable class period for the state in which the individual was employed by Janney (as set forth in Schedule 1 to the Class Notice)." (Order of Feb. 9, 2009 ¶ 3.)  The Court also conditionally certified a collective action comprised of "All individuals who were employed by Janney, in the position of Financial Consultant, Financial Consultant Trainee, Financial Advisor, and/or Financial Advisor Trainee, during the period from October 1, 2005 through October 1, 2008." (*Id.* ¶ 4.)

Pursuant to this Order, on February 27, 2009, the claims administrator mailed the notice via first class mail to 1,310 settlement class members at their last known address.  (Decl. of Gerald D. Wells [hereinafter "Wells Decl."] ¶ 28; Aff. of Stephen J. Cirami [hereinafter "Cirami Aff."] ¶¶ 5,7.) A subsequent mailing, on April 24, 2009, advised the class members of a change in the date of the Final Approval Hearing.  (Wells Decl. ¶ 28; Cirami Aff. ¶ 8.)  A reminder postcard was mailed on May 8, 2009 to class members who had not yet submitted either a Consent to Join Form or an Exclusion Form.  (Wells Decl. ¶ 28; Cirami Aff. ¶ 9.)  Ten individuals requested exclusion from the settlement and no class members objected.  (Wells Decl. ¶¶ 33,34; Cirami Aff. ¶ 10.)

B.     **Terms of the Settlement**

Under the terms of the settlement, Janney agrees, *inter alia*, to the following:

a)      to pay $2,880,000.00 (the "Maximum Settlement Amount") plus interest earned on this amount.  This amount will be used to satisfy the qualifying claims of class members, attorney's fees and costs, enhancement awards to Class Representatives, all employer payroll taxes associated with payments, and the costs of claim administration.  The settlement amount is non-reversionary.

b)      to not oppose Plaintiffs' Executive Committee's application for an award of

4

attorneys' fees of $864,000, or 30% of the Settlement Amount, plus accrued interest and reimbursement of litigation costs.

c)      to not oppose Plaintiffs' application for class representatives enhancement awards of $20,000.

(Mem. in Supp. of Pls.' Unopposed Mot. for Final Approval of Settlement ["Mem. in Supp. of Settlement"] at 5-6; Joint Stipulation and Settlement Agreement [hereinafter "Stipulation"].)

In exchange, Plaintiffs agree, *inter alia*, to dismiss the lawsuit with prejudice.  Class members who fail to timely exclude themselves from the class forever relieve Janney from any and all applicable state law wage-and-hour claims related to this litigation that accrued prior to the date of the Court's final order in this matter.  (Proposed Final J. and Order of Dismissal ¶ 11.)  In addition, each settlement class member who submitted a fully executed Consent to Join Settlement Class Form forever releases Janney from any claim that accrued prior to the date of the Court's final order based on and/or arising under the Fair Labor Standards Act of 1938 ("FLSA").  (*Id.* ¶ 12.)

## II.      CERTIFICATION OF THE CLASS

The Court must first analyze the status of the potential class and determine whether certification is appropriate.  The Court has already conditionally certified a settlement class, a step that typically occurs when a court delays formal class certification until the parties have successfully negotiated a settlement.  *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 786 (3d Cir. 1995).  Should discussions prove fruitful and a settlement be achieved, the

court will then certify the class for settlement purposes only.[3]  *Id*.  Should negotiations fail to produce a settlement, a defendant remains free to contest the existence of a class.  *Id*.

A provisionally certified settlement class must still receive final district court approval in accordance with the Federal Rules of Civil Procedure.  *Id*. at 797 ("[w]hile we approve the provisional certification of a settlement class to facilitate settlement discussions, final settlement approval depends on the finding that the class met all the requisites of Rule 23").

### A.   Numerosity, Commonality, Typicality, Adequacy of Representation

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure.  As noted, this Court certified a "settlement only class."  But this certification was necessarily provisional as the Court is required to conduct the appropriate legal analysis before a settlement class may be approved.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-21 (1997); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 308 (3d Cir. 1998) ("[A] district court must find a class satisfies the requirements of Rule 23, regardless whether it certifies the class for trial or for settlement."); *Gen. Motors*, 55 F.3d at 799 ("[a]ctions certified as settlement classes must meet the same requirements under Rule 23 as litigation classes.").  Four prerequisites must be met for a lawsuit to be maintained as a class action: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the

---

[3] It is beyond doubt that settlement classes are an acceptable device at a court's disposal in the class action realm.  *Gen. Motors*, 55 F.3d at 794 (explicitly recognizing settlement classes under Rule 23); 4 William B. Rubenstein, Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:27 (4th ed. 2009) [hereinafter "*Newberg*"] ("the parties may stipulate that [the litigation] be maintained as a class action for the purpose of settlement only."); MANUAL FOR COMPLEX LITIGATION § 21.132 (4th ed. 2005).

class; and (4) the representative parties must fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a); *see also In re LifeUSA Holding, Inc.*, 242 F.3d 136, 143 (3d Cir. 2001). The elements of this quaternary are known as numerosity, commonality, typicality, and adequacy of representation.

### 1.     Numerosity

The first requirement for a class action is that "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1); *see also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 (3d Cir. 2001). While there is no precise number of putative class members that will ensure the numerosity requirement is met, a potential class exceeding forty members is generally considered sufficient. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001); *see also Servanti v. Bucks Technical High Sch.*, 225 F.R.D. 159, 165 (E.D. Pa. 2004) (settlement class contained at least forty-seven potential members); 1 *Newberg* § 3:5 ("Certainly, when the class is very large, for example, numbering in the hundreds, joinder will be impracticable; but in most cases, the number that will, in itself, satisfy the Rule 23(a)(1) prerequisite should be much lower."). Here, there are 1,310 class members. Accordingly, the numerosity requirement is clearly satisfied.

### 2.     Commonality

The commonality requirement is met when the named plaintiffs share "at least one question of fact or law with the grievances of the prospective class." *Stewart*, 275 F.3d at 227 (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)); *Godshall v. The Franklin Mint Co.*, Civ. A. No. 01-6539, 2004 WL 2745890, at *2 (E.D. Pa. Dec. 1, 2004) ("Generally this requirement is satisfied when the defendant has engaged in the same conduct towards members of the proposed class.").

Commonality is more easily established when plaintiffs assert an economic, as opposed to a physical, injury because few if any individual proof issues are expected to arise. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004).

Plaintiff's Consolidated Complaint identifies numerous common questions of law and fact. (Consol. Compl. ¶¶ 42, 47.) These include, among others: whether Securities Brokers were wrongfully classified by Defendant as exempt from overtime compensation, whether Defendant failed to pay class members for all hours worked, whether class members were expected or required to work in excess of forty hours each week, and whether Defendant violated applicable wage and overtime laws. (*Id.*) The Complaint thus contains numerous allegations that Defendant treated the proposed class uniformly. Accordingly, the commonality requirement is satisfied.

### 3.    *Typicality*

The typicality requirement examines "whether the named Plaintiff's individual circumstances are markedly different [from those of unnamed class members] or . . . the legal theory upon which the claims are based differs from that upon which the claims of the other class members will perforce be based." *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985) (quoting *Weiss v. York Hosp.*, 745 F.2d 786, 809 n.36 (3d Cir. 1984)); *see also Baby Neal*, 43 F.3d at 57-58 (internal citations omitted). Typicality does not require that putative class members share identical claims. *Warfarin*, 391 F.3d at 531-32. Instead, "[t]he heart of this requirement is that the plaintiff and each member of the represented group have an interest in prevailing on similar legal claims." *Seidman v. Am. Mobile Sys., Inc.*, 157 F.R.D. 354, 360 (E.D. Pa. 1984). When the named plaintiffs and putative class members seek to challenge the same allegedly unlawful conduct, the typicality requirement is usually satisfied even though different fact patterns may underlie the individual claims. *Serventi*,

8

225 F.R.D. at 165; *see also Godshall*, 2004 WL 2745890, at *2 (typicality requirement met when all class members would rely upon the same legal theory to establish liability). The named Plaintiffs' claims in this case – that Defendant wrongly classified them as exempt from overtime and failed to compensate them for all hours worked – are typical of those of the Class as they derive from the same factual predicates and rely upon the same legal theory.

> 4.    *Adequacy of Representation*

This requirement ensures that the named plaintiffs fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a)(4). The Court must be satisfied that: (a) plaintiffs' attorneys are qualified, experienced, and generally able to conduct the litigation; and (b) the interests of the named representatives are not antagonistic to those of other class members. *See generally*, *Warfarin*, 391 F.3d at 532; *see also Gen. Motors*, 55 F.3d at 800-01.

Six law firms served as Class Counsel in this litigation and three firms comprised the Plaintiffs' Executive Committee: Barroway Topaz Kessler Meltzer & Check, LLP ("BTKMC"); Carlson Lynch, Ltd.; and Lovell Stewart Halebian, LLP. Class Counsel possess extensive experience in employment and labor law and in complex litigation. Courts within the Third Circuit and elsewhere have found that these firms possess the skill, experience, and qualifications necessary to conduct class action litigation similar to this case. *See, e.g.*, *Klingensmith v. BP Prods. N. Am., Inc.*, Civ. A. No. 07-1065, 2008 WL 4360965, at *3 (W.D. Pa. Sept. 24, 2008); *In re Schering-Plough Corp. Erisa Litig.*, Civ. A. No. 03-1204, 2008 WL 4510255, at *8 (D.N.J. Jan. 31 2008); *Leider v. Ralfe*, Civ. A. No. 01-3137, 2003 WL 24571746, at *9 (S.D.N.Y. Mar. 4, 2003). The Court has not been apprised of any conflict between the interests of the named Plaintiffs and other class members, nor is any such conflict discernible. The named Plaintiffs were impacted by the employment

practices at issue in the same manner as the class members and share the same incentive to establish the alleged violations. Therefore, the adequacy of representation prerequisite is satisfied.

**B.     The Maintainability of the Class Action**

In addition to meeting the four requirements of Rule 23(a), a proposed class must also qualify under one of the three sub-parts of Rule 23(b). *Warfarin*, 391 F.3d at 527. Here, Plaintiffs seek to maintain this class action under Rule 23(b)(3), which permits class action lawsuits when "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

The issue of predominance "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Bonett*, 2003 WL 21658267, at *4 (quoting *Amchem*, 521 U.S. at 623). Predominance is normally satisfied when plaintiffs have alleged a common course of conduct on the part of the defendant. *See Prudential*, 148 F.3d at 314-15; *Barel v. Bank of Am.*, 255 F.R.D. 393, 399 (E.D. Pa. 2009). As Plaintiffs have alleged such a common course of conduct here, based on Defendant's employment policies, the Court finds that the predominance requirement is satisfied.

The superiority requirement is also met. According to Rule 23, the matters to consider in making this determination include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

It would be inefficient to maintain hundreds of lawsuits against Defendant based on similar factual

predicates and legal theories.  Individual prosecution of these claims would not be cost-effective.

Class actions serve to overcome the problem of small recoveries, which fail to provide incentives

for individual class members to bring an action.  *Amchem*, 521 U.S. 147, 155 (citation omitted).

There is one separate class action currently pending against Defendant that involves the claims

pending in this Court.  That case, *Andrew P. Haag v. Janney Montgomery Scott LLC*, was filed in

the Allegheny County Court of Common Pleas on behalf of a Pennsylvania class of Security Brokers.

Haag is also a Plaintiff in this case and, by agreement of the parties, that action will be terminated

simultaneously with the settlement in this case.  This Court is an appropriate forum, as it possess

subject matter jurisdiction over the claims and personal jurisdiction over the parties.  Jurisdiction

extends to class members given the provision of minimal due process protections, including the best

practicable notice and an opportunity to be heard, which were provided in this case.  *Phillips

Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).  Manageability need not be considered here

since the settlement will avoid trial.  *Amchem*, 521 U.S. at 620.  Accordingly, the superiority

requirement is met.

### C.     Collective Action Certification

Certification of a collective action is governed by § 216(b) of the Fair Labor Standards Act,

29 U.S.C. § 216(b).  For a collective action to proceed two requirements must be met: (1) all

members of the collective action must affirmatively consent to join and (2) all members of the

collective action must be "similarly situated."   There has been no objection to the Court's

preliminary certification of this litigation as a collective action, nor is there any change that would

indicate that the members of the federal class are no longer "similarly situated."  *See Chemi v.

Champion Mortgage*, Civ. A. No. 05-1238, 2009 WL 1470429, at *10 (D.N.J. May 26, 2009).  The

11

Nationwide Collective Class includes all Janney Securities Brokers nationwide. The Court is satisfied that, for the purposes of settlement, the members of the Nationwide Collective Class who submitted a Consent to Join Settlement Class Form have satisfied the requirements for collective action certification.

### III.    NOTICE TO THE CLASS

Federal Rule of Civil Procedure 23(c)(2)(B) requires that the court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). Due process requires that class members receive adequate notice because they are bound by the judgment entered in the action. *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 474 (E.D. Pa. 2000). The Court's February 9, 2009 Order Granting Preliminary Approval of Settlement approved the class notice forms and authorized that they be sent in accordance with the parties' stipulation. The stipulation provided for mailing of class notice via first class mail to all class members at their last known address. (Stipulation ¶ 2.7.1.) These addresses were to be provided to the claims administrator by Defendant. (*Id.* ¶ 2.7.3.) Prior to mailing notice, the administrator was to verify these addresses and update them as appropriate. (*Id.* ¶ 2.7.4.) The stipulation also outlined the procedure for dealing with notices returned undelivered to the claims administrator. (*Id.* ¶ 2.7.8.) Provision was also made for the mailing of reminder postcards to class members who did not respond to the initial mailing. (*Id.* ¶ 2.7.9.)

Plaintiffs have provided ample evidence of their compliance with the Court's Order and the terms of the Stipulation. Individual notice was mailed to 1,310 settlement class members on

February 27, 2009. (Wells Decl. ¶ 28; Cirami Aff. ¶ 5.) Prior to mailing, the individuals' addresses were updated by running them through the Postal Service's National Change of Address ("NCOA") database. (Cirami Aff. ¶ 4.) Notice packets returned to the claims administrator with a forwarding address were promptly remailed to the new address. (*Id.* ¶ 5.) For those returned without a forwarding address the claims administrator searched for an updated address. (*Id.*) As a result of this second NCOA database search, twenty notices were mailed to updated addresses. (*Id.*) Pursuant to the terms of the Stipulation, if no updated address was found the notice was remailed to the undeliverable address. (*Id.*) The claims administrator, at the direction of counsel, also sent a postcard to all class members on April 24, 2009, notifying them of a change in the date of the Final Approval Hearing. (*Id.* ¶ 8.) An additional postcard was sent on May 8, 2009 to those class members who had not yet submitted any written response to the notice. (*Id.* ¶ 9.) The Court finds that the notice provided comports with both Rule 23 and due process. *See Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1560 (3d Cir. 1994) (finding notice sent by mail to each class member provided sufficient due process protections).

## IV.   FAIRNESS OF THE SETTLEMENT

Rule 23(e) directs that the court must approve any settlement of a class action. FED. R. CIV. P. 23(e). Prior to approval, the court must conduct a hearing and decide whether the settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2); *see also Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 965 (3d Cir. 1983). "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975); *see also Walsh*, 726 F.2d at 965. The law looks favorably upon class

action settlements because avoiding a trial conserves scarce judicial resources. *Gen. Motors*, 55 F.3d at 784. The advantages to settlement increase when settlement also avoids litigation over class status. *Id.* Of course, because "the district court acts as a fiduciary who serves as a guardian of the rights of absent class members . . . . [T]he court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate." *Id.* at 785 (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975)).

The decision of whether a settlement should be approved as fair, reasonable and adequate is guided by the nine-factor test set forth by the Third Circuit in *Girsh*. The *Girsh* test directs district courts to examine: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater settlement; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation. *Girsh*, 521 F.2d at 157 (internal citations omitted). If, as here, the settlement is the result of extensive arm's length negotiations between experienced counsel and following substantial discovery, the Court grants the proposed settlement a presumption of fairness. *See Warfarin*, 391 F.3d at 535. As the following application of these factors reveals, the proposed settlement is fair, reasonable, and adequate.

## A.    Complexity, Expense, and Duration of Litigation

This factor aims to capture the monetary costs and time involved in pursuing the litigation to trial and beyond. *See In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 629 (E.D. Pa. 2004);

14

*see also Gen. Motors*, 55 F.3d at 812.  Here, settlement allows both the class and Defendant to avoid the obstacles presented by protracted litigation.  Considerable time, money and resources will be saved by approving the settlement.  Moving forward with the litigation would surely involve the filing of numerous briefs and motions.  (*See* Mem. in Supp. of Settlement at 18 (noting "prospects for significant discovery, abundant motion practice, a jury trial, and probably appeal process . . . .").)  Both sides would zealously present their positions throughout the course of the litigation and trial with neither side certain of the outcome.  Indeed, Defendant has already filed numerous motions to dismiss and motions for summary judgment, foreshadowing the vigorous battle on the merits that would surely ensue.  For all of these reasons, the Court finds that this first factor weighs in favor of the proposed settlement.

### B.       Reaction of the Class to the Settlement

This factor examines whether the class supports the settlement.  *Warfarin*, 391 F.3d at 536; *see also Prudential*, 148 F.3d at 318.  Silence from the class is generally presumed to indicate agreement with the settlement terms.  *Gen. Motors*, 55 F.3d at 812 (citing *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993)).  "Generally, if the class members do not oppose the class settlement, the court is justified in concluding that they consider it fair and reasonable." *Lachance v. Harrington*, 965 F. Supp. 630, 645 (E.D. Pa. 1997) (citations omitted).  In determining the adequacy of a settlement, the class' reaction is possibly the most significant factor.  *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 294 (E.D. Pa. 2003) (citation omitted).

Of the 1,310 persons to whom notice was sent, only ten requested exclusion from the class.  (Cirami Aff. ¶ 10.)  There have been no objections to the settlement.  (Wells Decl. ¶ 33.)  Such a response (or lack thereof) weighs greatly in favor of approving the settlement.  *See*, *e.g.*, *Stoetzner*

*v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (settlement favored when only twenty-nine

out of 281 class member objected); *Stoner v. CBI Info. Servs.*, 352 F. Supp. 2d 549, 552 (E.D. Pa.

2005) (eighteen opt-outs and five objectors in a class of 11,980 indicated "a more than favorable

class reaction"); *Oslan v. Law Offices of Mitchell N. Kay*, 232 F. Supp. 2d 436, 442 (E.D. Pa. 2002)

("It is indicative of the settlement's fairness that only one member opted out and that no member of

the Class filed an objection at the Final Approval Hearing.").

### C.    The Stage of the Proceedings and the Amount of Discovery Completed

The third Girsh factor considers the current stage of the proceedings and the lawyers'

knowledge of the strengths and weaknesses of their case.  "Through this lens, courts can determine

whether counsel had an adequate appreciation of the merits of the case before negotiating." *Gen.*

*Motors*, 55 F.3d 813.  The parties in this litigation engaged in extensive discovery: Defendant

produced several thousand pages of discovery, both parties responded to interrogatories and

subpoenas, and each of the three named Plaintiffs was deposed.  (Mem. in Supp. of Settlement at 4.)

The parties engaged in multiple mediations and protracted negotiations, which included extensive

exchanges of information.  (*Id.* at 4-5.)  These efforts provided Class Counsel with ample

opportunity to realistically assess the risks of litigation and the probable scope of recovery. *See Lake*

*v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995) ("Significant weight should be

attributed to the belief of experienced counsel that settlement is in the best interest of the class.").

These facts, coupled with counsel's experience in similar class actions, convinces the court that

Class Counsel possessed a firm grasp of the merits of this case.

### D.    The Risks of Establishing Liability

"By evaluating the risks of establishing liability, the district court can examine what the

potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *Gen. Motors*, 55 F.3d at 814.  In examining this factor, the Court need not delve into the merits of each side's arguments, but rather may "give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action." *Lachance*, 965 F. Supp. at 638.

Plaintiffs cite a recent case in which a court in the Northern District of California granted final approval of a proposed class action settlement involving similar claims.  *See Glass v. UBS Fin. Servs., Inc.*, Civ. A. No. 06-4068, 2007 WL 221862 (N.D. Cal. Jan. 26 2007).  The court noted the legal uncertainty, at the time of settlement, regarding whether federal and state law entitle stockbrokers to overtime.  *Id.* at *3.  The *Glass* court observed that a November 27, 2006 Opinion Letter issued by the Department of Labor "stat[ed] that stockbrokers, to the extent they perform certain duties, meet the requirements of the administrative exemption and, thus, are not entitled to overtime under the FLSA."  *Id.*  Plaintiffs in this case contend that this letter, while not binding on courts, still indicates the risks they face in establishing liability.  Moreover, a court in this district recently found that a financial advisor was exempt from the FLSA's overtime protections and accordingly granted the defendant summary judgment.  *Hein v. PNC Fin. Servs. Group, Inc.*, 511 F.Supp.2d 563 (E.D. Pa. 2007).  These facts reveal the potential difficulties in establishing liability.  Class Counsel recognize these challenges.  Given the risks that the class faces, this factor favors the proposed settlement.

### E. The Risks of Establishing Damages

"[T]his inquiry attempts to measure the expected value of litigating the action rather than

settling it at the current time." *Gen. Motors*, 55 F.3d at 816.  This factor is often considered in conjunction with the risks of establishing liability.  *See, e.g. Lenahan v. Sears, Roebuck and Co.*, Civ. A. No. 02-0045, 2006 WL 2085282, at *14 (D.N.J. July 24, 2006) ("To the extent that establishing damages is contingent upon liability, many of the same risks will be present in each analysis.").  In addition to the difficulties in establishing liability, risks remain in proving damages. Establishing damages would entail potential risks in providing proper documentation of overtime hours worked; Plaintiffs cannot be certain they will establish at trial damages equivalent to the settlement.  Defendants would also likely assert that a change in compensation practices in September 2005 mitigated in whole or in part the Plaintiffs' claims.  (Wells Decl. ¶ 42.)  Settlement of this litigation eliminates these risks and, as such, this factor favors settlement approval.

**F.      The Risks of Maintaining the Class Action Through Trial**

What the district court giveth, the district court may taketh away: the court may decertify or modify a class at any time during the litigation should the class prove to be unmanageable. *Linerboard*, 321 F. Supp. 2d at 631 (citing *In re School Asbestos Litig.*, 789 F.2d 996, 1011 (3d Cir. 1986)); *see also Rendler v. Gambone Bros. Dev. Co.*, 182 F.R.D. 152, 160 (E.D. Pa. 1998) (class certification is always conditional and subject to reconsideration by the court).  Plaintiffs speculate that Defendant would aggressively challenge class certification should this case proceed and would appeal any grant of certification.  (Mem. in Supp. of Settlement at 22; Wells Decl. ¶ 44.)  Any such challenges would prolong the litigation and increase its costs.  As such, this factor favors the proposed settlement.

**G.      The Ability of the Settling Defendants to Withstand a Greater Judgment**

Given the lack of evidence presented to the Court regarding Defendant's ability to pay, the

Court concludes that this factor is neutral.  *See Warfarin*, 391 F.3d at 538.  Moreover, this factor's importance is lessened by the obstacles the class would face in establishing liability and damages. *See Yong Soon Oh v. AT&T Corp.*, 225 F.R.D. 142, 150-51 (2004) ("There is no question that being the large conglomerate that it is, [AT & T] could have withstood a significantly greater judgment . . . [however] the difficulties the plaintiffs would have had in certifying a damages class and proving damages diminish the importance of this factor here.").

### H.   The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of the Attendant Risks of Litigation

The last two *Girsh* factors are frequently analyzed in conjunction.  *See, e.g.*, *Prudential*, 148 F.3d at 322; *Lenahan*, 2006 WL 2085282, at *15.  The first of these factors compares the present value of the damages plaintiffs would likely recover if successful in litigation, discounting for the risk of not prevailing, against the amount of the proposed settlement.  *Gen. Motors*, 55 F.3d at 806. The Court may give credence to the opinions of experienced attorneys in assessing this comparison. *Orloff*, 2004 WL 870691, at *7 (citation omitted).  "Further, the fact that a proposed settlement may amount to a fraction of the best possible recovery does not, without more, mean that the proposed settlement is inadequate."  *Linerboard*, 321 F. Supp. 2d at 632 (citation omitted).  The second of these factors, which focuses on the risks inherent in litigation, "requires the court to examine the terms of the settlement from a 'slightly different vantage point[]'– than reasonableness in light of the best recovery."  *Oslan*, 232 F. Supp. 2d at 444 (quoting *Gen. Motors*, 55 F.3d at 806).

Plaintiffs' Executive Committee, before agreeing to this settlement, considered the risks and possible delays inherent in litigation as well as relevant adverse wage and hour case law.  (Wells Decl. ¶ 48.)  The uncertain legal issues in this case pose litigation risks and reduce the likelihood of

recovery, providing support for the reasonableness of the settlement in this case. *See Lenahan*, 2006 WL 2085282, at *16 (finding that settlement *"*represents a good value for a case where numerous critical legal issues have not been determined and are therefore uncertain."). The Court concludes that the settlement is within the range of reasonableness both in relation to the best possible recovery and in consideration of the risks of litigation.

Consideration of the nine *Girsh* factors compels the Court to conclude that the settlement is fair, reasonable and adequate and as such should be approved.

## V.   THE *CY PRES* DONATION

The settlement provides that if otherwise eligible class members fail to cash their settlement checks the total amount of these checks shall be set aside.  (Stipulation ¶¶  2.3.2 & 2.9.3.)  If this amount exceeds $50,000, the amount over $50,000 shall be redistributed on a proportional basis to those class members who cashed their checks.  (*Id.*)  Any amount less than $50,000 will be distributed to a charity chosen by the Court from a list of three charities jointly submitted by the parties' counsel for the Court's consideration.  (*Id.*)

As recognized by a leading class action treatise, "[w]hile the use of a *cy pres* distribution remains controversial and unsettled in an adjudicated class action context, courts are not in disagreement that *cy pres* distributions are proper in connection with a class settlement, subject to court approval of the particular application of the funds." 4 Newberg § 11.20.  Accordingly, "even in circuits that have ruled that *cy pres* or fluid class recovery distributions are not valid in contested adjudications, these distributions have obtained a stamp of approval as part of a class settlement." *Id.*; *see also Coppolino v. Total Call Intern., Inc.*, 588 F.Supp.2d 594, 605 (D.N.J. 2008) (noting that

20

"*cy pres* distributions are permitted in situations where class recovery cannot feasibly be distributed to individual class members or where unclaimed funds remain following distribution to the class . . . ."); *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2008 WL 4542669 (E.D. Pa. Oct. 3, 2008) (directing distribution of remaining class funds as a *cy pres* donation).  The Court therefore approves the Stipulation's provision for the charitable donation of unclaimed funds that amount to less than $50,000.  If necessary, the parties are directed, following the determination of the amount of the settlement fund associated with checks that are not properly or timely negotiated, to motion for the Court's approval of a charitable donation.

# VI.   ENHANCEMENT AWARDS FOR CLASS REPRESENTATIVES

Payment awards to class representatives lie within the discretion of the trial court and may be provided as a reward for the benefit visited on the class.  *In re Plastic Tableware Antitrust Litig.*, Civ. A. No. 94-3564, 1995 WL 723175, at *2 (E.D. Pa. Dec. 4, 1995).  Factors that courts consider in determining whether incentive awards are appropriate include: the risk to the plaintiff in commencing litigation, both financially and otherwise; the notoriety and/or personal difficulties encountered by the representative plaintiff; the extent of the plaintiff's personal involvement in the lawsuit in terms of discovery responsibilities and/or testimony at depositions or trial; the duration of the litigation; and the plaintiff's personal benefit (or lack thereof) purely in his capacity as a member of the class.  *Id*. (citing *In re U.S. Biosci. Secur. Litig.*, 155 F.R.D. 116, 121 (E.D. Pa. 1994)); *see also Godshall*, 2004 WL 2745890, at *6.

Plaintiffs have expended significant time and resources for the benefit of the class.  The named Plaintiffs provided significant assistance in the prosecution of this case.  (Wells Decl. ¶ 91;

Farhy Decl. ¶¶ 12, 16; Haag Decl.  ¶¶ 12, 16; Incitti Decl.  ¶¶ 12, 16.)  Each Plaintiff was deposed for an entire day.  (Wells Decl. ¶ 92; Farhy Decl. ¶ 11; Haag Decl.  ¶ 11; Incitti Decl.  ¶ 11.)  They responded to discovery requests and aided their attorneys in understanding the case and the class members' employment duties.  (Farhy Decl. ¶¶ 9-10; Haag Decl. ¶¶ 9-10;  Incitti Decl.  ¶¶ 9-10.) The Plaintiffs also risked potential retaliation by bringing this action.  (Farhy Decl. ¶ 8; Haag Decl. ¶ 8; Incitti Decl.  ¶ 8.)

The Notice issued to class members in this case explained that application would be made to this Court for enhancement awards of up to $20,000 for each of the three named Plaintiffs. (Cirami Aff. Ex. A [Notice to Class Members]).  Notably, no class members objected to these awards.  (Mem. in Supp. of Mot. for Attorneys' Fees and Enhancement Awards [hereinafter "Mem. for Fees and Awards"] at 23.); *see Godshall*, 2004 WL 2745890, at *6.  The $20,000 to be awarded to each of the three named Plaintiffs is also in line with awards in similar class action litigation. *See Garett v. Morgan Stanley DW Inc.*, Civ. A. No. 04-1858 (S.D. Cal. Sept. 12, 2006) (order granting final approval) (awarding named plaintiffs enhancement awards of $20,000 each); *Weaver v. Edward D. Jones & Co., LP*, Civ. A. No. 08-529 (N.D. Ohio Jan. 5, 2009) (order granting final approval) (approving stipulation that included enhancement awards of $15,000 each to named plaintiffs); *see also Godshall*, 2004 WL 2745890, at *6 (awarding $20,000 to each of two named plaintiffs in employment class action involving $1,125,000 settlement fund).  The Court therefore approves the $20,000 enhancement awards for each of the named Plaintiffs in this case.

## VII.    ATTORNEYS' FEES AND EXPENSES

### A.    Overview

Class Counsel in this case request attorneys' fees of $864,000, which represents 30% of the settlement fund, plus accrued interest and $50,990.18 for costs and expenses.  Under the Federal Rules of Civil Procedure, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h).  This Court must conduct a "thorough judicial review" of Class Counsels' request for attorneys' fees.  *See Gen. Motors*, 55 F.3d at 819; *see also Prudential*, 148 F.3d at 333.  The party requesting fees must demonstrate the reasonableness of its request, and therefore must submit evidence that supports its request.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Courts in the Third Circuit employ one of two methods for calculating attorneys' fees in the class action context.  The lodestar method, normally applied in statutory fee shifting cases, multiplies the number of hours reasonably worked by a reasonable hourly rate.  *Saunders*, 2002 WL 1497374, at *15; *see also Lake*, 900 F. Supp. at 734.  A court determines a reasonable hourly rate by assessing the experience and skill of the  prevailing party's attorneys and by looking at the market rates in the relevant community for lawyers of reasonably comparable skill, experience and reputation.  *See Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001); *see also Student Pub. Interest Research Group of N.J., Inc. v. AT & T Bell Labs.*, 842 F.2d 1436, 1450 (3d Cir. 1988).

The percentage-of-recovery method, on the other hand, awards Class Counsel a fixed portion of the settlement fund.  Under this method, courts determine an appropriate fee for Class Counsel by examining the size of the settlement fund, any objections to the fee request, counsel's skill and efficiency, the complexity of the litigation and the amount of time counsel spent on it, the risk of

nonpayment, and awards in similar cases. *Stoner*, 352 F. Supp. 2d at 552-53 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000); *see also Godshall*, 2004 WL 2745890, at *5. The percentage-of-recovery method is preferred when, as is the case here, the fee is to be paid from a common fund. *See Prudential*, 148 F.3d at 333; *see also Lake*, 900 F. Supp. at 734 ("In situations where counsel and the class share a common fund, or where the fee and the settlement are claimed to be independent of each other, but actually derive from the same source, a percentage of the total recovery is more appropriate."). This method is generally favored in common fund cases because it permits courts to grant fees "in a manner that rewards counsel for success and penalizes it for failure." *Rite Aid Sec. Litig.*, 396 F.3d at 300 (quoting *Prudential*, 148 F.3d at 333). Generally, these awards range from nineteen percent to forty-five percent of the settlement fund. *In re Smithkline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990).

Accordingly, the Court will apply the percentage-of-recovery method in evaluating the award of attorneys' fees in this case, but, as is suggested by the Third Circuit, will cross-check this percentage award against a calculation using the lodestar method. *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 735 (3d Cir. 2001) (citing *Gunter*, 223 F.3d at 195 n. 1).

### B.    Percentage-of-Recovery Analysis

District courts in this circuit employ seven factors in determining the reasonableness of a fee petition when calculating the percentage-of-recovery method. Those factors are: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7)

the awards in similar cases. *Nichols v. SmithKline Beecham Corp.*, Civ. A. No. 00-6222, 2005 WL 950616, at *20 (E.D. Pa. Apr. 22, 2005) (citing *Gunter*, 223 F.3d at 195 n.1). The *Gunter* factors "need not be applied in a formulaic way, and their weight may vary on a case-by-case basis." *Yong Soon Oh*, 225 F.R.D. at 146 (citing *Gunter*, 223 F.3d at 195 n.1).

### 1.    The Size of the Fund Created and the Number of Persons Benefitted

"As a general rule, as the size of a fund increases, the appropriate percentage to be awarded to counsel decreases." *In re Cendant Corp., Derivative Action Litig.*, 232 F.Supp.2d 327, 337 (D.N.J. 2002). This inverse relationship is predicated on the assumption that often the increase in the size of a recovery is merely due to the size of the class and not the efforts of counsel. *In re Prudential*, 148 F.3d at 339. The Court finds the 30% award in this case reasonable in light of the settlement fund's size and does not believe it results in an unmerited windfall for the attorneys.

### 2.    The Presence or Absence of Substantial Objections by Class Members

As previously noted, no class members have objected to any component of the settlement in this matter, including the attorneys' fees request. "The absence of large numbers of objections mitigates against reducing fee awards." *In re Cendant Corp.*, 232 F. Supp. 2d at 337 (citations omitted). This factor thus favors awarding the requested fees.

### 3.    The Skill and Efficiency of the Attorneys Involved

The quality of representation in a case can be "measured by 'the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *In re Ikon Office Solutions, Inc., Secs. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (quoting *In re Computron Software, Inc.*, 6 F.Supp.2d 313, 323

(D.N.J. 1998)).

As previously noted, counsel in this case possess extensive experience in class action litigation and employment law.  The firms representing the class have been recognized by numerous courts for possessing the skill and qualifications necessary for complex litigation akin to this case.  Class Counsel effectively managed a consolidated action that began as three separate putative class and/or collective actions against Defendant.  Despite the legal uncertainty of their claims, counsel achieved a favorable settlement for their clients.  Opposing counsel, from the law firm of Morgan, Lewis, & Bockius, LLP, possess expertise and experience in complex employment litigation and zealously represented Defendant.

It is not as clear that this action was conducted as efficiently as possible.  Initial negotiations and a mediation attempt in early 2008 failed and litigation resumed, resulting in Defendant filing multiple summary judgment motions.  As Plaintiffs were preparing to respond and file certification motions, settlement negotiations and mediation resumed.  Settlement continued throughout late 2008, with the parties requesting numerous extensions of motion response deadlines as negotiations continued.  In February 2009, a motion for preliminary approval of settlement was finally filed.  Despite these concerns regarding the speed and efficiency with which this case was resolved, the Court finds that this factor slightly favors awarding the requested fees.

### 4.   The Complexity and Duration of the Litigation

This litigation has taken three years and involved significant motion practice.  In addition, the parties engaged in extensive discovery.  The case involves complex legal issues, both regarding class certification and legal liability.  This complexity and the duration of this litigation support approving the attorneys' fees award.

5.      *The Risk of Nonpayment*

Courts have found that this factor favors a fee application when defendants are close to insolvency or lack significant unencumbered assets from which a judgment could be obtained. *Yong Soon Oh*, 225 F.R.D. at 152 (citations omitted); *see also In re Cendant Corp.*, 232 F.Supp.2d at 339. No indication has been presented of a risk of non-payment by Defendant. Courts have also considered risks related to showing liability at trial and successfully prosecuting the claims of the class. *See In re Cendant Corp.*, 232 F.Supp.2d at 339. As noted previously, establishing liability at trial and maintaining class certification throughout the course of litigation was not certain in this case. But complex class actions often present such risks. Ultimately, the Court deems this factor of minimal importance in this case and finds that it is neutral in relation to approval of the fee application.

6.      *The Amount of Time Devoted to the Case by Plaintiffs' Counsel*

As the Court will discuss in greater detail in applying the lodestar method, Plaintiffs' counsel expended considerable time on this litigation, totaling in excess of 3,284 hours, over the course of three years. The litigation's complexity and Defendant's filing of multiple motions to dismiss and for summary judgment necessitated much of this effort. This factor also favors approval.

7.      *Awards in Similar Cases*

The Court is satisfied that the award of 30% of the settlement fund is similar to fees awarded in cases involving similar settlements. *See Gen. Motors*, 55 F. 3d at 822 (citations omitted) ("One court has noted that the fee awards have ranged from nineteen percent to forty-five percent of the settlement fund."); *see also Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000) (concluding "that an award of one-third of the settlement fund is reasonable in consideration of other

27

courts' awards"); *Nichols v. SmithKline Beecham Corp.*, Civ. A. No. 00-6222, 2005 WL 950616, at *19 (E.D. Pa. Apr. 22, 2005) (approving 30% fee in antitrust class action with $65 million settlement); *In re Cell Pathways, Inc., Secs. Litig. II*, Civ. A. No. 01-1189, 2002 WL 31528573, at *10 (E.D. Pa. Sept. 23, 2002) ("The thirty percent counsel has requested is well within the range approved in other class action fee awards where a percentage of the common fund was awarded."). As such, this factor favors approval of the attorneys' fees requested.

The Court concludes that the 30% of the settlement fund requested by Class Counsel in this case is reasonable and should be approved.

### C.    Lodestar Cross-Check

"The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting.  The district courts  may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005) (footnoted omitted) (citing *Prudential*, 148 F.3d at 342); *see also In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 WL 1221350, at *15 (E.D. Pa. June 2, 2004) (emphasizing that, when using percentage-of-recovery method, court would use lodestar method only as a cross-check and not conduct "a full lodestar analysis").  In applying the lodestar method, a Court examines the number of hours worked by Plaintiffs' counsel and the rate charged for counsel's services and then multiplies the number of hours worked by the hourly rate.  *Chemi*, 2009 WL 1470429, at *12.  The hourly rate can also be multiplied by a lodestar multiplier, which increases the fee amount to reflect the risk of nonpayment.  *Id.* (citing *Prudential*, 148 F.3d at 340-41 (describing discretionary use of multiplier to reflect risks, serve as incentive for socially beneficial litigation, and reward extraordinary results)). In common fund cases, multiples ranging from one to four are frequently applied.  *Prudential*, 148

F.3d at 341. "The lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method, with an eye toward reducing the award." *In re Rite Aid Corp. Secs. Litig.*, 396 F.3d at 306.

According to Plaintiffs, their Executive Committee's lodestar in this lawsuit is $1,610,407.75, which is more than the fee they have requested. (Mem. in Supp. of Settlement at 20.) This lodestar actually yields a fractional lodestar multiplier of 0.537. As such, Plaintiffs contend that "the effective lack of a lodestar multiplier evinces the reasonableness of the fee request." (*Id.*) In support of this lodestar, Plaintiffs' Executive Committee has submitted affidavits detailing the hours worked and hourly rates for each attorney and paralegal who worked on this matter. The hours worked and lodestar calculated does not include work delegated by the Executive Committee to other members of Class Counsel. (Wells Decl. ¶ 78.)    BTKMC spent 1,385.34 hours on this matter and, using current rates to calculate the lodestar, provided $638,908.25 in legal services. (*Id.* ¶ 79.) The hourly rates utilized in computing this lodestar were at or below the firm's usual and customary rated for FLSA and other complex litigation and no upward adjustments were made. (*Id.* ¶ 83.) The firm apportioned this work reasonably among attorneys and paralegals with different hourly rates, with the largest portions of work being billed by attorneys in the middle of the range of rates. (*Id.* ¶ 79.) Lovell Stewart Halebian spent 816.23 hours on this matter and, using current rates to calculate the lodestar, provided $499,049.05 in legal services. (Halebian Decl. ¶ 4.) The hourly rates utilized in computing this lodestar were at or below the firm's usual and customary rated for similar matters and no upward adjustments were made. (*Id.* ¶ 3.) Carlson Lynch spent 1083.00 hours on this matter and, using current rates to calculate the lodestar, provided $472,450.00 in legal services.

The affidavits provided by each of these firms, with their attachments, outline the

qualifications and relevant experience of the attorneys who worked on this matter.  As previously noted, the firms in this case have been approved by other courts as class counsel.  The Court is satisfied that the rates charged by these attorneys are reasonable in light of their skill and expertise with complex litigation of this type and their firms' locations in Philadelphia, New York and Pittsburgh respectively.  Moreover, this case involved an uncertain and complex area of law, which would typically justify a lodestar multiple that accounts for these risks.  Here, however, Class Counsel has requested fees that are a fraction of their lodestar.  Thus, the lodestar cross-check clearly confirms the reasonableness of the fee award in this case.  *See In re Automotive Refinishing Paint Antitrust Litig.*, MDL Docket No. 1426, 2008 WL 63269, at *6 (E.D. Pa. Jan. 3, 2008) (finding that when requested fee was less than amount calculated using lodestar method that lodestar-cross check confirmed reasonableness of requested fee percent).

### D.    Costs

Finally, Class Counsel seek $50,990.18 in costs as reimbursement for out-of-pocket costs reasonably incurred in conducting this litigation.  "Counsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case."  *In re Cendant Corp.*, 232 F. Supp. 2d 327 at 343.  This request for costs includes: 1) filing fees; 2) expert consulting; 3) copying charges; 4) electronic research; 5) travel, lodging and meal expenses; 6) costs of mediation; 7) postage.  (Wells Decl. ¶¶ 87-88 (noting review of expense reports by all counsel in the action) & 89 (seeking $27,502.25 in costs); Halebian Decl. Ex. C (seeking $4,151.42 in costs); Lynch Decl. ¶ 6 (seeking $12,465.09 in costs).)

The settlement agreement provides that Plaintiffs may apply for an award of attorneys' fees

and reimbursement of out-of-pocket expenses not in excess of $75,000.00 and that Janney will not object to such request.  Furthermore, the firms on the Executive Committee have submitted affidavits and billing summarys that demonstrate the reasonableness of the costs requested.[4]  *See Chemi*, 2009 WL 1470429, at *13 (finding summary of expenses sufficient for determination that expenses requested were reasonable).  Items such as photocopying, telephone and fax charges, express mail charges, expert witness fees, and computer-assisted research are necessary for the prosecution of a large class action lawsuit.  Accordingly Class Counsel are entitled to be reimbursed for those costs. *See Yong Soon Oh*, 225 F.R.D. at 154 (citations omitted).


## VIII.   CONCLUSION

For the reasons stated above, the Court grants final certification of the class in accordance with Rule 23, holds that the settlement is fair, adequate and reasonable, and awards Class Counsel $864,000.00 in attorneys' fees and $50,990.18 in costs.  An appropriate Order will be docketed separately.

---

[4] A portion of the total fees requested were incurred by four other firms that served as Class Counsel or were assigned work, but were not part of the Plaintiffs' Executive Committee. (*See* Wells. Decl. ¶¶ 58,87.)